UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| **CRYSTAL BARRS, ASHLEY** | § | Civil Action No. _____ |
| **MITCHELL, BRITTANY SALYERS,** | § | |
| **And TOINETTE WINSTON** | § | |
| Individually and on behalf of all others | § | **JURY TRIAL DEMANDED** |
| similarly situated | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | **COLLECTIVE ACTION** |
| | § | **PURSUANT TO 29 U.S.C. §216(b)** |
| **CHARTER** | § | |
| **COMMUNICATIONS, LLC** | § | |
| | § | |
| | § | **CLASS ACTION PURSUANT** |
| *Defendant.* | § | **TO FED. R. CIV. P. 23(b)(3)** |

## ORIGINAL COLLECTIVE / CLASS ACTION COMPLAINT

Plaintiffs Crystal Barrs, Ashley Mitchell, Brittany Salyers, and Toinette Winston bring this action individually and on behalf of all current and former non-exempt call-center employees (hereinafter "Plaintiffs and the Putative Class Members") who worked for Charter Communications, LLC (hereinafter "Defendant" or "Charter"), at any time during the relevant statutes of limitation through the final disposition of this matter, to recover compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 206, 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 201, *et seq.*, Texas common law, the Kentucky Wage and Hour Act, KY. REV. STAT. ANN. § 337.010, the Missouri Minimum Wage Law ("MMWL"), MO. REV. STAT. §§ 290.500, *et seq.*, Ohio's Minimum Fair Wage Standards Act ("OMFWSA"), OHIO REV. CODE ANN. §§ 4111.01, 4111.03, 4111.10, and the Ohio Prompt Pay Act ("OPPA"), and OHIO REV. CODE ANN. § 4113.15 (the OMFWSA and the OPPA will be referred to collectively as the "Ohio Acts").

Plaintiffs' FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29

U.S.C. § 216(b), while their respective state law claims are asserted as class actions under Federal Rule of Civil Procedure 23(b)(3) ("Rule 23"). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

# I.
## OVERVIEW

1.     This is a collective action to recover overtime wages and liquidated damages brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and Rule 23 class actions pursuant to the state laws of Texas, Kentucky, Missouri, and Ohio.

2.     Plaintiffs and the Putative Class Members are those similarly situated persons who have worked for Charter in call centers throughout the United States within the last three years and have not been paid for all hours worked or the proper amount of overtime in violation of state and federal law.

3.     Specifically, Charter has enforced a uniform company-wide policy wherein it improperly required its non-exempt hourly call-center employees—Plaintiffs and the Putative Class Members—to perform work "off-the-clock" and without pay.

4.     Charter's illegal company-wide policy has caused Plaintiffs and the Putative Class Members to have hours worked that were not compensated and further created a miscalculation of their regular rate(s) of pay for purposes of calculating their overtime compensation each workweek.

5.     Although Plaintiffs and the Putative Class Members routinely worked in excess of forty (40) hours per workweek, Plaintiffs and the Putative Class Members have not been paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

6.     Charter knowingly and deliberately failed to compensate Plaintiffs and the Putative Class Members for all hours worked and the proper amount of overtime each workweek on a routine and regular basis during the relevant time period.

7.      Plaintiffs and the Putative Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA, Texas law, Kentucky law, Missouri state law, or Ohio law.

8.      Plaintiffs and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all damages owed under their Texas, Kentucky, Missouri, and Ohio state-law claims as class actions pursuant t to Federal Rule of Civil Procedure 23.

9.      Plaintiffs pray that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

10.     Plaintiffs also pray that the Rule 23 classes be certified as defined herein, and that Plaintiff Barrs designated herein be named as the Class Representative for the Texas Common-Law Class, Plaintiff Mitchell designated herein be named as Class Representative for the Kentucky Class, Plaintiff Winston designated herein be named as Class Representative for the Missouri Class, and Plaintiff Salyers designated herein be named as Class Representative for the Ohio Class,

## II.
## THE PARTIES

11.     Plaintiff Crystal Barrs ("Barrs") was employed by Charter in Texas during the relevant time period. Plaintiff Barrs did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

12.     Plaintiff Ashley Mitchell ("Mitchell") was employed by Charter in Kentucky during the relevant time period. Plaintiff Mitchell did not receive compensation for all hours worked or the

---

[1] The written consent of Crystal Barrs is hereby attached as Exhibit "A."

correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[2]

13.     Plaintiff Toinette Winston ("Winston") was employed by Charter in Missouri during the relevant time period. Plaintiff Winston did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[3]

14.     Plaintiff Brittany Salyers ("Salyers") was employed by Charter in Ohio during the relevant time period. Plaintiff Salyers did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[4]

15.     The Putative Class Members are those current and former hourly call-center employees who were employed by Charter anywhere in the United States at any time during the last three years through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiffs worked and were paid.

16.     The Texas Common-Law Class Members are those current and former hourly call-center employees who were employed by Charter in the State of Texas at any time during the last four years through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Barrs worked and was paid.

17.     The Kentucky Class Members are those current and former hourly call-center employees who were employed by Charter in the State of Kentucky at any time during the last five

---

[2]  The written consent of Ashley Mitchell is hereby attached as Exhibit "B."

[3]  The written consent of Toinette Winston is hereby attached as Exhibit "C."

[4]  The written consent of Brittany Salyers is hereby attached as Exhibit "D."

years through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Mitchell worked and was paid.

18. The Missouri Class Members are those current and former hourly call-center employees who were employed by Charter in the State of Missouri any time during the last three years through the final disposition of this matter, and have been subjected the same illegal pay system under which Plaintiff Winston worked and was paid.

19. The Ohio Class Members are those current and former hourly call-center employees who were employed by Charter in the State of Ohio any time during the last three years through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Salyers worked and was paid.

20. Defendant Charter Communications, LLC ("Charter") is a foreign limited liability company, licensed to and doing business in the State of Texas and may be served with process through its registered agent for service of process: **CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas, 78701-3218.**

### III.
### JURISDICTION & VENUE

21. This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. § 201, *et seq.*

22. This Court has supplemental jurisdiction over the additional state-law claims pursuant to 28 U.S.C. § 1367.

23. This Court has personal jurisdiction over Charter because the cause of action arose within this District as a result of Charter's conduct within this District and Division.

24. Venue is proper in the Southern District of Texas because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

25. Specifically, Charter has maintained a working presence throughout the State of Texas (and the United States), and Plaintiff Barrs worked in McAllen, Texas throughout her employment with Charter, all of which are located in this District and Division.

26. Venue is proper in this this District pursuant to 28 U.S.C. § 1391(b).

## IV.
## ADDITIONAL FACTS

27. Charter operates throughout the United States and holds itself out as, "a connectivity company providing broadband, video, mobile, and voice services to over 28 million customers in 41 states under the brand-name Spectrum."[5]

28. To provide its services, Charter employed (and continues to employ) numerous hourly call-center employees–Plaintiffs and the Putative class Members–who provide customer support and sales services to its millions of customers.

29. Plaintiffs and the Putative Class Members' job duties consisted of answering phone calls made by Charter's customers, responding to customer inquiries, selling Charter's services, assisting with customers' billing matters, and generally helping Charter's customers.

30. Plaintiff Barrs was employed by Charter as a customer service representative in McAllen, Texas from approximately October of 2017 until October of 2018.

31. Plaintiff Mitchell was employed by Charter as a customer service representative in Florence, Kentucky from approximately November of 2016 until May of 2019.

32. Plaintiff Winston was employed by Charter as a customer service representative in St. Louis, Missouri from approximately March of 2017 until December of 2018.

_____

[5] https://policy.charter.com/about/

33. Plaintiff Salyers was employed by Charter as a customer service representative in Kettering, Ohio from approximately January of 2013 until December of 2018.

34. Plaintiffs and the Putative Class Members were (and are) non-exempt call-center employees that were (and are) paid by the hour.

35. Plaintiffs and the Putative Class Members typically worked approximately forty (40) "on-the-clock" hours per week.

36. In addition to their forty (40) "on-the-clock" hours, Plaintiffs and the Putative Class Members often worked up to two (2) hours "off-the-clock" per week and were never compensated for that time.

37. Plaintiffs and the Putative Class Members have not been compensated for all of the hours they worked for Charter as a result of Charter's company-wide policy and practice of paying its employees only for their scheduled shifts, and not for any of their pre- and/or post-shift activities performed for Charter's benefit.

38. Charter requires all call-center employees to be "call ready"—that is, to take their first phone call the moment their official shift starts each day.

39. Specifically, Plaintiffs and the Putative Class Members were (and are) required to log-in to their computer, open multiple Charter computer programs, log-in to each program, and ensure that each program is running correctly—all of which can take up to twenty (20) minutes—before they are able to clock in and take their first call.

40. During this start-up time, Plaintiffs and the Putative Class Members were not compensated although they were (and are) expected to have completed this process in advance of their official start time(s).

41. In addition, Plaintiffs and the Putative Class members were (and are) frequently on the telephone assisting Charter's customers when their shifts end and are required to remain on the

telephone assisting customers, although Plaintiffs and the Putative Class members were (and are) clocked out once their shift ends even if they are still on the phone assisting customers.

42.     As such, Charter required (and continues to require) Plaintiffs and the Putative Class Members to perform their start-up and shut-down tasks "off-the-clock" (and without pay) before their official shift begins, and after their official shift ends.

43.     As a result of Charter's company-wide policy and practice of requiring Plaintiffs and the Putative Class Members to perform their computer start-up tasks ***before*** their shifts begin, and requiring Plaintiffs and the Putative Class Members to remain on the telephone ***after*** their shifts ended, Plaintiffs and the Putative Class Members were not compensated for all hours worked, including all worked in excess of forty (40) in a workweek at the rates required by the FLSA.

44.     Charter has employed other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiffs.

45.     Charter is aware of its obligation to pay for all hours worked and the proper amount of overtime for all hours worked over forty (40), but has failed to do so.

46.     Because Charter did not pay Plaintiffs and the Putative Class Members for all hours worked and time and a half for all hours worked in excess of forty (40) in a workweek, Charter's pay policies and practices violate the FLSA.

47.     Because Charter did not pay Plaintiffs and the Putative Class Members for all hours worked on behalf of Charter, Charter's pay policies and practices also violate the laws of the states of Texas, Kentucky, Missouri, and Ohio.

## V.
## CAUSES OF ACTION

### COUNT ONE
**(Collective Action Alleging FLSA Violations)**

**A.     FLSA COVERAGE**

48.     All previous paragraphs are incorporated as though fully set forth herein.

49.     The FLSA Collective is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY CHARTER COMMUNICATIONS, LLC, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM JULY 22, 2016 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("FLSA Collective" or "FLSA Collective Members").**

50.     At all times hereinafter mentioned, Charter has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

51.     At all times hereinafter mentioned, Charter has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

52.     During the respective periods of Plaintiffs and the FLSA Collective Members' employment by Charter, these individuals provided services for Charter that involved interstate commerce for purposes of the FLSA.

53.     In performing the operations hereinabove described, Plaintiffs and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

54.     Specifically, Plaintiffs and the FLSA Collective Members are (or were) non-exempt employees of Charter who assisted customers living throughout the United States. 29 U.S.C. § 203(j).

55.     At all times hereinafter mentioned, Plaintiffs and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

56.     In violating the FLSA, Charter acted willfully, without a good faith basis and with reckless disregard of applicable federal law.

57.     The proposed collective of similarly situated employees, i.e. putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 49.

58.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Charter.

## B.     FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA

59.     All previous paragraphs are incorporated as though fully set forth herein.

60.     Charter violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) per workweek at rates at least one and one-half times the regular rates.

61.     Plaintiffs and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of Charter's acts or omissions as described herein; though Charter is in possession and control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages.

62.     Moreover, Charter knowingly, willfully and in reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees for all hours worked and the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

63.	Charter knew or should have known its pay practices were in violation of the FLSA.

64.	Charter is a sophisticated party and employer, and therefore knew (or should have known) its policies were in violation of the FLSA.

65.	Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) unsophisticated employees who trusted Charter to pay them in accordance with the law.

66.	The decision and practice by Charter to not pay for all hours worked or the proper amount of overtime for all hours worked over forty (40) was neither reasonable nor in good faith.

67.	Accordingly, Plaintiffs and the FLSA Collective Members are entitled to be paid for all hours worked and overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C.	FLSA COLLECTIVE ACTION ALLEGATIONS

68.	All previous paragraphs are incorporated as though fully set forth herein.

69.	Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of all Charter's employees who have been similarly situated to Plaintiffs with regard to the work they performed and the manner in which they were paid.

70.	Other similarly situated employees have been victimized by Charter's patterns, practices, and policies, which are in willful violation of the FLSA.

71.	The FLSA Collective Members are defined in Paragraph 49.

72.	Charter's failure to pay for all hours worked and overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices, and does not depend on the personal circumstances of the Plaintiffs or the FLSA Collective Members.

73.	Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

74.     The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

75.     All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked and the proper amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.

76.     Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

77.     Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and Charter will retain the proceeds of its rampant violations.

78.     Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

79.     Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 49 and notice should be promptly sent.

<u>COUNT TWO</u>
**(Class Action Alleging Violations of Texas Common Law)**

**A.     VIOLATIONS OF TEXAS COMMON LAW**

80.     All previous paragraphs are incorporated as though fully set forth herein.

81.     Plaintiff Barrs further brings this action pursuant to equitable theory of *quantum meruit*. *See Artemis Seafood, Inc. v. Butcher's Choice, Inc.* No. CIV. A. 3:98-0282, 1999 WL 608853, at *3 (N.D. Tex. Aug. 11, 1999) (citing *Schuchart & Assocs. V. Solo Serve Corp.*, 1983 WL 1147, at *23 (W.D. Tex. June 29, 1983)).

82.     The Texas Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED**

**BY CHARTER COMMUNICATIONS, LLC, IN THE STATE OF TEXAS, AT ANY TIME FROM JULY 22, 2015 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Texas Common-Law Class" or "Texas Common-Law Class Members").**

83.     Plaintiff Barrs and the Texas Common-Law Class Members are entitled to recover their unpaid "straight time" or "gap time" wages for services rendered on behalf of Charter. These claims are independent of their claims for unpaid overtime wages pursuant to the FLSA, and they are therefore not preempted by the FLSA. *See Carman v. Meritage Homes Corp.*, 37 F. Supp. 3d 860, 867 (S.D. Tex. 2014) (recognizing that claims for unpaid "straight time" or "gap time" wages are not covered by the FLSA, and are instead recoverable according to state law legal theories).

84.     Plaintiff Barrs and the Texas Common-Law Class Members conferred a valuable benefit on Charter because they provided services to Charter before and after their shifts—during their respective computer start-up times and after their shifts ended—without compensation.

85.     Charter accepted Plaintiff Barrs and the Texas Common-Law Class Members' services and benefited from their timely dedication to Charter's policies and adherence to Charter's schedule.

86.     Charter was aware that Plaintiff Barrs and the Texas Common-Law Class Members worked through their respective computer start-up times and after their shifts ended without compensation and further, caused them to continue to work through their respective computer start-up times and after their shifts ended while off the clock and without pay.

87.     Charter has therefore benefited from services rendered by Plaintiff Barrs and the Texas Common-Law Class Members and Plaintiff Barrs and the Texas Common-Law Class Members are entitled to recover pursuant to the equitable theory of *quantum meruit*.

**B.     TEXAS COMMON-LAW CLASS ALLEGATIONS**

88.     Plaintiff Barrs brings her Texas Common-Law claim as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Charter to work in Texas since July 22, 2016. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004.

89. Class action treatment of the Texas Common-Law Class Members is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

90. The number of Texas Common-Law Class Members is so numerous that joinder of all class members is impracticable.

91. Plaintiff Barrs is a member of the Texas Common-Law Class, her claims are typical of the claims of the other Texas Common-Law Class Members, and she has no interests that are antagonistic to or in conflict with the interests of the other Texas Common-Law Class Members.

92. Plaintiff Barrs and her counsel will fairly and adequately represent the Texas Common-Law Class Members and their interests.

93. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

94. Accordingly, the Texas Common-Law Class should be certified as defined in Paragraph 82.

## COUNT THREE
### (Class Action Alleging Violations of the Kentucky Wage Laws)

**A. KENTUCKY COVERAGE**

95. All previous paragraphs are incorporated as though fully set forth herein.

96. The Kentucky Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY CHARTER COMMUNICATIONS, LLC, IN THE STATE OF KENTUCKY, AT ANY TIME FROM JULY 22, 2014 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Kentucky Class" or "Kentucky Class Members").**

97. At all times hereinafter mentioned, Charter has been an employer within the meaning of the Kentucky Wage Laws, KY. REV. STAT. ANN. §337.010 et seq. (collectively "Kentucky Statutes").

98. At all times hereinafter mentioned, Plaintiff Mitchell and the Kentucky Class Members have been "employees" within the meaning of Kentucky Statutes. *See* KY. REV. STAT. ANN. §337.010 et seq.

99. Plaintiff Mitchell and the Kentucky Class Members were or have been employed by Charter since July 22, 2014 and have been covered employees entitled to the protections of the Kentucky Statutes.

100. The employer, Charter, is not exempt from paying overtime benefits under the Kentucky Statues.

**B.    FAILURE TO PAY WAGES IN ACCORDANCE WITH THE KENTUCKY STATUTES**

101. All previous paragraphs are incorporated as though fully set forth herein.

102. The Kentucky Statutes, KY. REV. STAT. ANN § 337.020, require employers to pay their employees' wages as often as semimonthly, for wages earned not more than eighteen (18) days prior to the date of that payment.

103. Wages are defined as, "any compensation due to an employee by reason of his or her employment, including salaries, commissions, vested vacation pay, overtime pay, severance or dismissal pay, earned bonuses, and any other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy." KY. REV. STAT. ANN. § 337.010.

104. Plaintiff Mitchell and the Kentucky Class Members seek to recover their unpaid wages that are owed to them as a result of Charter's company-wide policy of causing them to perform work "off-the-clock."

105. Plaintiff Mitchell and the Kentucky Class Members have suffered damages and continue to suffer damages as a result of Charter's acts or omissions as described herein; though Charter is in possession and control of necessary documents and information from which Plaintiff Mitchell and the Kentucky Class Members would be able to precisely calculate damages.

106.     Plaintiff Mitchell, on behalf of herself and the Kentucky Class Members, seeks recovery of the unpaid wages earned and due, liquidated damages, interest, attorneys' fees, and costs.

107.     In violating the Kentucky Statute, Charter acted willfully, without a good faith basis, and with reckless disregard of applicable Kentucky law.

108.     The proposed class of employees, i.e. putative class members sought to be certified pursuant to the Kentucky Statute is defined in Paragraph 96.

109.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Charter.

## C.     KENTUCKY CLASS ALLEGATIONS

110.     All previous paragraphs are incorporated as though fully set forth herein.

111.     Plaintiff Mitchell brings her Kentucky claims pursuant to Kentucky Statutes as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Charter to work in Kentucky since July 22, 2014.

112.     Class action treatment of Plaintiff Mitchell and the Kentucky Class Members' claims is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

113.     The number of Kentucky Class Members is so numerous that joinder of all class members is impracticable.

114.     Plaintiff Mitchell is a member of the Kentucky Class, her claims are typical of the claims of other Kentucky Class Members, and she has no interests that are antagonistic to or in conflict with the interests of any of the other Kentucky Class Members.

115.     Plaintiff Mitchell and her counsel will fairly and adequately represent the Kentucky Class Members and their interests.

116.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

117.     Accordingly, the Kentucky Class should be certified as defined in Paragraph 96.

## COUNT FOUR
### (Class Action Alleging Violations of the MMWL)

A.     **MISSOURI ACT COVERAGE**

118.     All previous paragraphs are incorporated as though fully set forth herein.

119.     The MMWL Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY CHARTER COMMUNICATIONS, LLC., IN THE STATE OF MISSOURI, AT ANY TIME FROM JULY 22, 2016 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Missouri Class" or "Missouri Class Members").**

120.     At all times hereinafter mentioned, Charter has been an "employer" within the meaning of the MMWL, MO. REV. STAT. § 290.500(4).

121.     At all times hereinafter mentioned, Plaintiff Winston and the Missouri Class Members have been "employees" within the meaning of the MMWL, MO. REV. STAT. § 290.500(3).

B.     **FAILURE TO PAY WAGES IN ACCORDANCE WITH THE MISSOURI ACT**

122.     All previous paragraphs are incorporated as though fully set forth herein.

123.     Charter owes Plaintiff Winston and the Missouri Class Members wages, as defined in section 290.500(7) of the Act, to compensate them for labor and services they provided to Charter in the furtherance of their job duties. *See* MO. REV. STAT § 290.500(7).

124.     Plaintiff Winston and the Missouri Class Members are not exempt from receiving overtime benefits under the MMWL.

125.     Plaintiff Winston and the Missouri Class Members worked more than forty (40) hours in workweeks during times relevant to this complaint, however, Charter violated the MMWL by failing to pay Plaintiff Winston and the Missouri Class Members for all hours worked on Charter's behalf, and for failing to pay the correct amount of overtime for all hours worked over forty (40) per week. *See* MO. REV. STAT §§ 290.502, 290.505.

126.     Plaintiff Winston and the Missouri Class Members have suffered damages and continue to suffer damages as a result of Charter's acts or omissions as described herein; though Charter is in possession and control of necessary documents and information from which Plaintiff Winston would be able to precisely calculate damages.

127.     The MMWL provides that Plaintiff Winston and the Missouri Class Members are entitled to recover the unpaid wages and an equal amount as liquidated damages. *See* MO. REV. STAT §§ 290.527.

128.     In violating the MMWL, Charter acted willfully, without a good faith basis and with reckless disregard of clearly applicable Missouri law.

129.     The proposed class of employees, i.e. putative class members sought to be certified pursuant to the MMWL, is defined in Paragraph 119.

130.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Charter.

C.     **MMWL CLASS ALLEGATIONS**

131.     Plaintiff Winston brings her MMWL claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Charter to work in Missouri since July 22, 2016.

132.     Class action treatment of Plaintiff Winston's MMWL claims is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

133. The number of Missouri Class Members is so numerous that joinder of all class members is impracticable.

134. Plaintiff Winston is a member of the Missouri Class, her claims are typical of the claims of the Missouri Class Members, and she has no interests that are antagonistic to or in conflict with the interests of the Missouri Class Members.

135. Plaintiff Winston and her counsel will fairly and adequately represent the Missouri Class Members and their interests.

136. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

137. Accordingly, the Missouri Class should be certified as defined in Paragraph 119.

## COUNT FIVE
### (Class Action Alleging Violations of the Ohio Acts)

**A.      OHIO ACTS COVERAGE**

138. All previous paragraphs are incorporated as though fully set forth herein.

139. The Ohio Acts Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY CHARTER COMMUNICATIONS, LLC, IN THE STATE OF OHIO, AT ANY TIME FROM JULY 22, 2016 THROUGH THE FINAL DISPOSITION OF THIS MATTER ("Ohio Acts Class" or "Ohio Acts Class Members").**

140. At all times hereinafter mentioned, Charter has been an "employer" within the meaning of the OMFWSA, OHIO REV. CODE ANN. § 4111.03(D)(2).

141. At all times hereinafter mentioned, Plaintiff Salyers and the Ohio Acts Class members have been "employees" within the meaning of the OMFWSA, OHIO REV. CODE ANN. § 4111.03(D)(3).

142. Plaintiff Salyers and the Ohio Acts Class Members were or have been employed by Charter since July 22, 2016, and have been covered employees entitled to the protections of the Ohio Acts and were not exempt from the protections of the Ohio Acts.

143. The employer, Charter, is not exempt from paying overtime benefits under the Ohio Acts.

## B. FAILURE TO PAY WAGES IN ACCORDANCE WITH THE OHIO ACTS

144. All previous paragraphs are incorporated as though fully set forth herein.

145. The OMFWSA requires that employees, including Plaintiff Salyers and the Ohio Acts Class Members receive "time and one-half" overtime premium compensation for hours worked over forty (40) per week.

146. The OPPA requires that Charter pay Plaintiff Salyers and the Ohio Acts Class Members all wages, including unpaid overtime, on or before the first day of each month, for wages earned by her during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by her during the last half of the preceding calendar month.

147. Plaintiff Salyers and the Ohio Acts Class Members were or have been employed by Charter since July 22, 2016, and have been covered employees entitled to the protections of the Ohio Acts.

148. Charter is an employer covered by the requirements set forth in the Ohio Acts.

149. Plaintiff Salyers and other Ohio Acts Class Members have not been exempt from receiving overtime benefits under the Ohio Acts.

150. Plaintiff Salyers and the Ohio Acts Class Members worked more than forty (40) hours in workweeks during times relevant to this case, however, Charter violated the Ohio Acts by failing to

pay Plaintiff Salyers and other Ohio Acts Class Members any overtime premium for hours worked over 40 per week.

151.    Plaintiff Salyers and the Ohio Acts Class Members were not paid all wages, including overtime wages at one and one-half times their regular rates within thirty (30) days of performing the work.

152.    The wages of Plaintiff Salyers and the Ohio Acts Class Members remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

153.    Plaintiff Salyers and the Ohio Acts Class Members have suffered damages and continue to suffer damages as a result of Charter's acts or omissions as described herein; though Charter is in possession and control of necessary documents and information from which Plaintiff Salyers would be able to precisely calculate damages

154.    In violating the Ohio Acts, Charter acted willfully, without a good faith basis, and with reckless disregard of applicable Ohio law.

155.    The proposed class of employees, i.e. putative class members sought to be certified pursuant to the Ohio Acts, is defined in Paragraph 139.

156.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Charter.

C.    **OHIO ACTS CLASS ALLEGATIONS**

157.    All previous paragraphs are incorporated as though fully set forth herein.

158.    Plaintiff Salyers brings her Ohio Acts claims as class actions pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Charter to work in Ohio since July 22, 2016.

159.    Class action treatment of Plaintiff Salyers's Ohio Acts claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

160.     The number of Ohio Acts Members is so numerous that joinder of all class members is impracticable.

161.     Plaintiff Salyers is a member of the Ohio Acts Class, her claims are typical of the claims of other Ohio Acts Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other Ohio Acts Class Members.

162.     Plaintiff Salyers and her counsel will fairly and adequately represent the Ohio Acts Class Members and their interests.

163.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

164.     Accordingly, the Ohio Acts Class should be certified as defined in Paragraph 139.

## VI.
## RELIEF SOUGHT

165.     Plaintiffs respectfully pray for judgment against Charter as follows:

a.     For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective as defined in Paragraph 49 and requiring Charter to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

b.     For an Order certifying the Texas Common-Law Class as defined in Paragraph 82, and designating Plaintiff Barrs as Representative of the Texas Common-Law Class;

c.     For an Order certifying the Kentucky Class as defined in Paragraph 96, and designating Plaintiff Mitchell as Representative of the Kentucky Class;

d.      For an Order certifying the Missouri Class as defined in Paragraph 119, and designating Plaintiff Winston as Representative of the Missouri Class;

e.      For an Order certifying the Ohio Class as defined in Paragraph 139, and designating Plaintiff Salyers as Representative of the Ohio Acts Class;

f.      For an Order approving the form and content of a notice to be sent to all putative FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

g.      For an Order awarding Plaintiffs (and those FLSA Collective Members who have joined in the suit) back wages that have been improperly withheld;

h.      For an Order pursuant to Section 16(b) of the FLSA finding Charter liable for unpaid back wages due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), and for attorneys' fees and costs;

i.      For an Order pursuant to Texas Common-Law awarding Plaintiff Barrs and the Texas Common-Law Class Members unpaid wages and other damages allowed by law;

j.      For an Order pursuant to Kentucky Law awarding Plaintiff Mitchell and the Kentucky Class Members unpaid wages and other damages allowed by law;

k.      For an Order pursuant to MMWL awarding Plaintiff Winston and the Missouri Class Members unpaid wages and other damages allowed by law;

l.      For an Order pursuant to the Ohio Acts awarding Plaintiff Salyers and the Ohio Class Members unpaid wages and other damages allowed by law;

m.      For an Order awarding the costs and expenses of this action;

n.      For an Order awarding attorneys' fees;

o.      For an Order awarding post-judgment and moratory interest at the highest rates allowed by law;

p.      For an Order awarding Plaintiff Barrs a service award as permitted by law;

q.      For an Order awarding Plaintiff Mitchell a service award as permitted by law;

r.      For an Order awarding Plaintiff Winston a service award as permitted by law;

s.      For an Order awarding Plaintiff Salyers a service award as permitted by law;

t.      For an Order compelling the accounting of the books and records of Charter, at Charter's own expense;

u.      For an Order providing for injunctive relief prohibiting Charter from engaging in future violations of the FLSA, Texas state law, Kentucky state law, Missouri state law, Ohio state law, and requiring Charter to comply with such laws going forward; and

v.      For an Order granting such other and further relief as may be necessary and appropriate.


Dated: July 22, 2019                    Respectfully submitted,

                                        **ANDERSON ALEXANDER, PLLC**

                              By:       /s/ Clif Alexnder
                                        **Clif Alexander**
                                        Federal I.D. No. 1138436
                                        Texas Bar No. 24064805
                                        clif@a2xlaw.com
                                        **Austin W. Anderson**
                                        Federal I.D. No. 777114
                                        Texas Bar No. 24045189
                                        austin@a2xlaw.com
                                        **Lauren E. Braddy**
                                        Federal I.D. No. 1122168
                                        Texas Bar No. 24071993
                                        lauren@a2xlaw.com
                                        **Alan Clifton Gordon**
                                        Federal I.D. No. 19259
                                        Texas Bar No. 00793838

cgordon@a2xlaw.com
**Carter T. Hastings**
Federal I.D. No. 3101064
Texas Bar No. 24101879
carter@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

*Attorneys for Plaintiffs and the Putative Class
Members*